IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| THOMAS P. OSCAR, | * | |
| Plaintiff, | * | |
| v. | * | |
| | | Civil Action No.: RDB-09-17 |
| TOM VILSAK, | * | |
| SECRETARY, U.S. DEPT. OF AGRICULTURE, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Pro se Plaintiff Thomas P. Oscar ("Oscar") brings this race discrimination claim against Defendant Tom Vilsak, Secretary of the United States Department of Agriculture ("USDA").[1] Oscar is a white research scientist for the USDA who works at a laboratory affiliated with the University of Maryland, Eastern Shore ("UMES"), a historically black university. Oscar claims that a seven member panel of the USDA failed to upgrade his position classification from GS-13 to GS-14 because the panel "discount[ed] his accomplishments because of his association with a minority institution," in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq.* ("Title VII").[2] Response at 2. Pending before this Court is Defendant USDA's Motion for Summary Judgment (Paper No. 13). The parties' submissions have been reviewed and no

---

[1] The pro se Plaintiff originally named Edward T. Schafer, the former Secretary of Agriculture, and Edward Knipling, the Administrator of Agricultural Research Service, as Defendants in his pro se Complaint. On January 28, 2010, the Clerk's Office of this Court replaced the names of those officials with that of Defendant Tom Vilsak, the current Secretary of the United States Department of Agriculture, who is the appropriate Defendant for this action against a federal agency.

[2] General Schedule (or GS) is the name of a payscale used by the majority of white collar personnel in the civil service of the federal government of the United States. *See* 5 U.S.C. § 5331–5338.

1

hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2008).  For the reasons stated below, Defendant USDA's Motion for Summary Judgment (Paper No. 13) is GRANTED.

## BACKGROUND

At the time Thomas P. Oscar's GS classification upgrade was denied he held a Category 1 position as a Research Food Technologist with the USDA's Agricultural Research Service and was classified as GS-13.  Summ. J. Memo. Ex. 7 at 2.  Oscar's worksite, including his laboratory, is located in Princess Anne, Maryland at the University of Maryland, Eastern Shore ("UMES"), a historically black university.  Summ. J. Memo. Ex. 7 at 10.  Although Oscar's lab is located on the UMES campus, he is a USDA employee, not a UMES employee.  Summ. J. Memo. Ex. 7 at 10.

The GS grade classification for a Category 1 scientist's position is determined by a seven member panel ("the Panel") with specialized training in Research Position Evaluation System procedures.  Summ. J. Memo. Ex. 3.  The Panel's seven members all have equal votes.  Summ. J. Memo. Exs. 4, 17.  One member of the Panel serves as the in-depth reviewer for the case, and is responsible for gathering information that is necessary to determine the Category 1 scientist's classification.  Summ. J. Memo. Exs. 3, 17.

A Category 1 scientist has open-ended promotion potential based upon the Panel's periodic evaluation of his Case Writeup, which "should provide the panel with detailed information regarding the impact of the most important research or research related accomplishments of the Category 1 scientist."  *Id*. at 13-37.  The Panel's evaluation looks at four aspects of a Category 1 scientist's research as displayed through his Case Writeup:

      1 – Research Assignment
      2 – Supervisory Controls
      3 – Guidelines and Originality, and
      4 – Contributions, Impact and Stature

Summ. J. Memo. Ex. 3 at 56.  All of these factors are considered equally except for the fourth – Contributions, Impact and Stature – which receives twice as much weight.  Summ. J. Memo. Ex. 24 at 8.  Before meeting as a group, the members of the Panel independently assign a letter grade to each of the four factors for the Case Writeup that they are evaluating.  Summ. J. Memo. Ex. 3 at 40.  The Panel then privately convenes to present their grades to each other, hear the in-depth reviewer's report, and deliberate to reach a final consensus about the appropriate letter grades to assign to each factor.  Summ. J. Memo. Ex. 3 at 47.  Notably, a Category 1 scientist does not appear before the Panel at any point during his evaluation.  *Id*. at 46-49.

On November 7, 2007, the Panel convened to make a determination as to Oscar's GS classification.  Summ. J. Memo. Ex. 24.  Dr. Charles B. Stephensen, a white research scientist, was designated as the in-depth reviewer for Oscar's Case Writeup, and gave a summary of his findings to the Panel.  Summ. J. Memo. Ex. 9.  Dr. Stephensen, the only member of the Panel who was aware of Oscar's race, was also the only member of the Panel to give Oscar a preliminary rating that would qualify him for a classification upgrade to GS-14.  Summ. J. Memo. Exs. 9-15.  After meeting together, the Panel ultimately came to a consensus that Oscar should remain in his current grade of GS-13.  *Id*.  According to Dr. Stephensen, the main reason for the Panel's decision was that the impact of Plaintiff's research – the most heavily weighted of the four factors – did not warrant a promotion.  Summ. J. Memo. Ex. 9 at 4.  Dr. Stephensen affirmed that the Panel's discussion convinced him that Oscar's research did not warrant a promotion.  *Id*. at 6.

On December 15, 2007, Oscar filed an administrative complaint with the USDA alleging that:

> The Agency subjected him to discriminatory harassment based on reprisal (prior equal employment opportunity (EEO) activity and opposition to discriminatory

>policies) and race (Caucasian – by association with an African-American group or institution) when on November 8, 2007, he learned he was denied a promotion to the GS-14 level.

Summ. J. Memo. Ex. 1. An Equal Employment Opportunity ("EEO") investigator looked into Oscar's complaint and compiled a Report of Investigation. Summ. J. Memo. Ex. 1. On September 26, 2008, the USDA's Office of Adjudication and Compliance rendered a Final Agency Decision, finding that the Panel's decision not to promote Oscar to the GS-14 level was not harassment based upon reprisal or race. Summ. J. Memo. Ex. 2.

On January 5, 2009, Oscar filed a Complaint in this Court, reasserting the same claim he made in his administrative complaint. Specifically, Oscar alleges that the USDA:

>Subjected him to race discrimination based on association with a Historically Black College or University ("HBCU") when on November 7, 2007, a panel tasked with classifying his position returned a decision that he should remain a GS-13 rather than be classified as a GS-14.

Complaint at ¶ 6(h). Oscar's sole evidence of this alleged race discrimination is the following unsworn statement made by Dr. Stephensen, which the EEO investigator included in the Report of Investigation:

>[Dr. Stephensen] said that . . . there are some other sub-optimal factors, such as that [Oscar] works alone at the University of Maryland, Eastern Shore, which is not a good situation. He said [that Oscar] has been there a long time so he assumed [Oscar] was comfortable in a pretty low-key research assignment on a campus without much research going on. In other words, he said, [Oscar] is pretty isolated, and given his number of years, he should recognize this and recognize that it is not a good research assignment from an ARA perspective. He said the University and faculty are very happy that [Oscar] is there, and [Oscar] interacts with the students, but he said it is not a 'hotbed' of research activity and [Oscar] does not seem to get that.

Complaint at ¶ 6(e). Oscar contends that "[t]his statement indicates that I was not promoted because of my close working relationship with African Americans at UMES." Summ. J. Memo. Ex. 7 at 4. The USDA moves for Summary Judgment, arguing that these statements are race neutral and that there is no evidence the Panel's decision was based upon race discrimination.

4

On September 18, 2009, Oscar filed a Submission of New Evidence Supporting Alleged Discrimination, which explains that at some point Oscar appealed the Panel's decision to deny him a classification upgrade to the Office of Personnel Management ("OPM").  Paper No. 16.  This Submission notes that on September 11, 2009, OPM determined that Oscar's position should be classified as GS-14, rather than GS-13.  *Id*. Ex. 1.

## **STANDARD OF REVIEW**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A material fact is one that "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial.  *Id*. at 249.  "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  In that context, a court is obligated to consider the facts and all reasonable inferences in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005).

## ANALYSIS

Oscar asserts that he was denied a classification upgrade to GS-14 because he worked at a historically black university, which constitutes race discrimination that violates Title VII. Generally speaking, a plaintiff may avert summary judgment and establish a claim of intentional discrimination using "ordinary principles of proof by any direct or indirect evidence relevant to and sufficiently probative of the issue." *EEOC v. Western Elec. Co., Inc.,* 713 F.2d 1011, 1014 (4th Cir. 1983). Alternatively, a plaintiff may proceed under the proof scheme established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), and its progeny, under which the employee, after establishing a *prima facie* case of discrimination, must demonstrate that the employer's proffered nondiscriminatory reason for the challenged employment action is in fact a pretext for discrimination. *Id.* This Court will analyze the evidence under both standards.

**I.    Direct Evidence of Discrimination**

The USDA argues that Oscar has presented no direct evidence of discrimination. Oscar alleges that Dr. Stephensen's comments that UMES is a "low-key research assignment" and not a "hotbed of research activity" show that his accomplishments were discounted because of his association with a historically black university. Fed. Complaint ¶ 6(h). However, Oscar provides no support for the link between these statements and the alleged discriminatory intent. Oscar's mere speculation that Dr. Stephensen's statements indicate discriminatory intent is not direct evidence of discrimination. "A plaintiff's own self-serving opinions, absent anything more, are insufficient to establish a *prima facie* case of discrimination." *Mackey v. Shalala*, 360 F.3d 463, 469-70 (4th Cir. 2004). Nothing in Dr. Stephensen's statements indicate that he has a negative opinion of UMES as a research institution because it is a historically black university. Dr. Stephensen's sworn affidavit confirms that although he was aware that UMES was a

historically black university, that did not influence his opinion of its research programs. Summ. J. Memo. Ex. 9 at 4-5. Notably, Dr. Stephensen was the sole member of the Panel who initially found that Oscar *should* receive a classification upgrade. Even if these statements were discriminatory on their face, the decision to keep Oscar classified as GS-13 was made by a seven member panel. These statements were only made by one member of the Panel, Dr. Stephensen, and cannot be attributed to the other six members.

Oscar also seems to suggest that OPM's decision that he should be classified as a GS-14 supports his race discrimination claim. Paper No. 16 at 1. In doing so, Oscar conflates the question of whether the Panel correctly classified his position with whether the Panel engaged in race discrimination. OPM's decision does not give any indication that it found the Panel's determination was influenced by Oscar's race, or his affiliation with a historically black university. Thus, the fact that OPM reached a different conclusion about Oscar's classification than the Panel has no bearing on the case at hand. *See Afande v. National Lutheran Home for the Aged*, 868 F. Supp. 795, 802 (D. Md. 1994) (an employer's reason for terminating a member of a protected class need not be sound or even fair; the sole relevant inquiry is whether the decision was based on a protected status).

Accordingly, Oscar has not provided this Court with direct evidence of discrimination.

**II.     Indirect Evidence of Discrimination**

Since Oscar provides no direct evidence of discrimination, this Court must apply the burden-shifting test first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 (1973), to determine whether there has been a violation of Title VII. Under this test, a plaintiff must first present enough evidence to make a prima facie case of discrimination. *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 142-43 (2000). Once the plaintiff establishes a

prima facie case, the burden shifts to the defendant to produce evidence that the adverse employment actions were taken against the plaintiff "for a legitimate, nondiscriminatory reason." *Id.* at 142 (citing *Tex. Dept. Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)).  Finally, the plaintiff is "afforded the 'opportunity to prove by a preponderance of evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Id.* (quoting *Burdine*, 450 U.S. at 253).

In order to make a prima facie showing of race discrimination based on failure to promote, a plaintiff must show that "(1) he is a member of a protected group, (2) he applied for the position in question, (3) he was qualified for that position, and (4) the defendant[] rejected his application under circumstances that give rise to an inference of unlawful discrimination." *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005).  The Defendant does not present argument with respect to the first, second and third factors.  With respect to the fourth element, the USDA argues that Oscar has failed to establish an inference of unlawful discrimination because the circumstances under which the Panel determined that Oscar would remain classified as GS-13 do not give rise to an inference of unlawful discrimination. Before the Panel met, six of its seven members independently determined that Oscar should remain a GS-13 based upon his Case Writeup.  Summ. J. Memo. Ex. 24.  The Panel clearly stated that the principal reason for reaching this decision was the impact of Oscar's research did not warrant a promotion.  Summ. J. Memo. Ex. 9 at 4.  If anything, the fact that the only member of the Panel to initially recommend Oscar for a classification upgrade was Dr. Stephensen, who was also the only member of the Panel aware of Oscar's race, militates against Oscar's claim. Summ. J. Memo. Ex. 24 at 1.  Furthermore, Dr. Stephensen has since affirmed that he was convinced during the Panel's meeting that Oscar's research did not warrant a promotion, and

thus was in full agreement with the final decision. Summ. J. Memo. Ex. 9 at 6. All members of the Panel have stated that race played no role in their decisions when grading Oscar. Summ. J. Memo. Exs. 9-15 at 2.

Oscar also attempts to support his claim by alleging that two co-workers, Dr. Gary Richards and Dr. David Kingsley, were treated differently than he was and received the promotion to GS-14 that Oscar should also have received. Summ. J. Memo. Ex. 7 at 4. However, as the USDA points out, these comparisons only undercut Oscar's claim of discrimination since, like Oscar, both Dr. Richards and Dr. Kingsley are white and are stationed at a historically black university. *Id*. Thus, if anything, these individuals show that the USDA does grant classification upgrades to scientists whose labs are affiliated with historically black universities. Accordingly, even if Oscar could establish a prima facie case of discriminatory failure to promote, the USDA has satisfied its burden of presenting a legitimate, nondiscriminatory reason for the Panel's decision. Oscar has not alleged that the Panel's reasons were pretextual.

In conclusion, even viewing the facts in a light most favorable to Oscar, there is no genuine issue of material fact as to whether the Panel failed to promote him in violation of Title VII and the USDA is entitled to judgment as a matter of law.

For the reasons stated above, Defendant USDA's Motion for Summary Judgment (Paper No. 13) is GRANTED.

A separate Order follows.

Dated: January 28, 2010               /s/_____
                                      Richard D. Bennett
                                      United States District Judge